UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                               CASE NO:   3:20-cr-150-20JRK

BRIAN CHRISTOPHER KING
_____/

**DEFENDANT'S CORRECTED SENTENCING MEMORANDUM[1]**

The Defendant, BRIAN CHRISTOPHER KING, by and through undersigned counsel, hereby files this Sentencing Memorandum, which includes his objections to the Pre-Sentence Investigation Report (PSR). The Defendant asks the Court to impose a reasonable sentence not greater than necessary under the circumstances, which would involve a significant downward departure from the sentencing guidelines. In support of his request, the Defendant states as follows:

**I.  Introduction**

The Defendant is scheduled for sentencing on September 29, 2021, at 10:00 a.m.  The Defendant would offer the following information, to help the Court place the general information contained in the PSR in the appropriate

---

[1] The only correction is contained in the first full paragraph on page 3, beginning with "The Defendant does not dispute…"

context, to correct or explain information contained in the PSR, and to assist in the Court's evaluation of the role or the Defendant, to arrive at the appropriate adjusted offense level. In addition, this memorandum contains objections to the offense scoring in the PSR and analyze the application of 18 U.S.C. §3553 to the Defendant.

## II. Details of Offense Conduct

While the Offense Conduct portion (¶¶ 9-16) of the PSR is essentially accurate, it fails to fully outline the mitigating aspects and context of the Defendant's conduct.

Mr. King called Senator Richard Burr (R-NC) twice, in quick succession, on the night of March 20, 2020, and left the Senator angry, drunk voicemails. The government has been able to link Mr. King's two calls to a Fox News broadcast alleging that Senator Burr had engaged in "illegal insider trading" after attending a confidential Senate briefing on the spread of COVID 19. He was one of three senators Fox News accused of selling travel industry-related stocks and purchasing stocks in pharmaceutical companies after the briefing. In his call(s), Mr. King mentions the two other Senators in the Fox News story, Senators Diane Feinstein (D-CA) and Kelly Loeffler (R-GA). He is clearly heavily intoxicated, and his anger is clearly directed at the "illegal" activity alleged in the Fox news story.

When confronted by FBI agents on March 24, 2020, Mr. King immediately cooperated with the investigation, voluntarily surrendering his cell phone. He admitted that it was his voice on the voicemail(s) but did not remember the

call(s) and admitted to being heavily intoxicated when he made them.

The Defendant does not dispute that on several occasions he had made calls and voiced his opinion while he was intoxicated. However, the incident involving Senator Burr was the only instance in which he is alleged to have directly threatened a public official. The other calls outlined in the PSR were made to law enforcement, and when investigated by the F.B.I. were determined not to be threats within the meaning of the statute. It is also significant to, once again, point out that the call(s) to Senator Burr were precipitated by Burr's alleged illegal activity, not because of the lawful discharge of his senatorial duties.

### III. SCORING

A. Mr King is entitled to have his base offense level decreased by four (4) levels, pursuant to 2A6.1(b)(6), which states:

> If (A) subsection (a)(2) and subdivisions (1), (2), (3), (4), and (5) do not apply, and (B) the offense involved a single instance evidencing little or no deliberation, decrease by 4 levels.

The call(s) to Senator Byrd were made at the same time, one immediately after the other. The government charged them as a single incident. It is undisputed that the calls were a spontaneous reaction to a story on Fox News. Finally, the PSR does not apply any of the enhancements outlined in subdivisions 2A6.1(b) (1-5).[2] The offense conduct therefore satisfies all of the criteria outlined

---

[2] As explained above, Mr. King's other calls were, likewise, spontaneous; were made to law enforcement agencies while he was intoxicated; were substantially different from the offense conduct in both time and nature; and did not meet the statutory definition of "threatening". As a result, Mr. King was not criminally charged with that conduct, and the conduct did not form the basis for a two-level adjustment pursuant to U.S.S.G., § 2A6.1(b)(2).

in 2A6.1(b)(6), and the Base Offense Level should be adjusted to Level 8.

B.    The PSR contains a six-level upward adjustment (¶23 ), which relies on the language of U.S.S.G. §3A1.2(b):

> (Apply the greatest):
> (a) If (1) the victim was (A) a government officer or employee; (B) a former government officer or employee; or (C) a member of the immediate family of a person described in subdivision (A) or (B); and (2) the offense of conviction was motivated by such status, increase by **3** levels.
>
> (b) If subsection (a)(1) and (2) apply, and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person), increase by 6 levels.

In order for the adjustment to apply, therefore, the threat must have been made to a government officer or employee, **and** that *the offense of conviction must have been motivated by such status*. Obviously, Senator Burr is a "government officer or employee". However, in this case, it is undisputed that Mr. King's threat was motivated by the Senator's alleged criminal activity, **not** by his status as a "government officer or employee".

There is no clear Guidelines definition for the term "*motivated by such status*", and counsel has found no decisions involving threats precipitated by a public official's criminal activity while in office. Under the facts of this case, if you assume that the Fox News story was true, Senator Burr was privy to the insider information only because of his official status. However, Mr. King's threat was not precipitated by Senator Burr's official status. Rather, the threat was motivated by Senator's criminal activity, an abuse of that status.

Because of this, under the instant facts, it appears that the Court would not commit error whether it sustained the six-level enhancement, or it did not. Mr. King urges the Court *to reject* the six-level enhancement. This would result in an Adjusted Offense Level of 8.

If the Court rejects the six-level enhancement and applies a two-level downward adjustment for acceptance of responsibility (¶ 28), the Defendant's Total Offense Level would be 6, and the Advisory Guidelines Range would be 0-6 months. The government's recommended sentence would then coincide with the top of the applicable guidelines range.

C.   Even if the Court determines that some "government officer" enhancement should apply, there is a strong rationale for a much more minimal enhancement. In acknowledgement that the threat Mr. King made was not directly related to Senator Burr's "performance of official duties", the government agreed to dismiss Count One of the Indictment and agreed to permit Mr. King to plead guilty to Count Two, which, instead, charged Mr. King only with transmitting threats in interstate commerce.

The Guidelines themselves recognize that there is a delicate balance between protected dissent, "no matter how coarse, uncivil or inflammatory" and unprotected violent speech. Further, the Guidelines encourage the Court to make the types of nuanced distinctions that necessarily arise when attempting to achieve that delicate balance.

Application Note 4 to U.S.S.G. § 2A6.1 encourages downward departures

based on the facts of individual cases, stating:

> The Commission recognizes that offenses covered by this guideline may include a particularly wide range of conduct and that it is not possible to include all of the potentially relevant circumstances in the offense level. Factors not incorporated in the guideline may be considered by the court in determining whether a departure from the guidelines is warranted. *See* Chapter Five, Part K (Departures).

This language represents a finding by the Sentencing Guidelines Commission, that there will be circumstances "not adequately taken into consideration by the Sentencing Commission in formulating" the provisions of U.S.S.G., §2A6.1.

Mr. King's offense conduct represents such a circumstance. Mr. King did not have the intention nor the ability to carry out his threat; it was made while he was intoxicated; it was a spontaneous act, triggered by a provocative and inflammatory story on Fox News; and he did not even recall what he had said until agents played a recording of it. Under those circumstances, a reduction or elimination of the six-level upward adjustment is justified pursuant to U.S.S.G. §5K2.0, because sustaining the six-level upward adjustment results in an over-representation of the seriousness of the offense conduct.

D. Mr. King's age and physical condition also justify a downward departure, pursuant to U.S.S.G, §5H1.1 and U.S.S.G, §5H1.4. He is almost 63 and is in poor health. As reported in the PSR (¶ 50):

> King reported historically suffering with chronic obstructive pulmonary disease (Albuterol inhaler); hypertension (Lisinopril); high cholesterol (Atorvastatin); Type 2 diabetes (Metformin); back pain (Hydrocodone); and insomnia (Trazodone). He also reported

body pain (back, knees, hip) associated with three automobile accidents. The defendant historically sought treatment for his ailments, but since becoming sober, he stopped treatment because he feels better. Medical records from February 2021 support King's report of treatment, and he displayed his old prescriptions during the virtual interview with the probation officer.

Early intervention and quitting cigarettes appear to have substantially resolved Mr. King's risk of developing oral cancer.

Although his sobriety has improved Mr. King's physical condition, incarceration presents an unnecessary risk due to his age and historical ailments, making these concerns a legitimate basis for a downward departure to a sentence of home confinement rather than incarceration.

E.   The advisory guideline range for imposition of a fine pursuant to U.S.S.G., §5E1.2(c) (3) will be dependent on the Court's determination of Mr. King's Total Offense Level. While Mr. King has the ability to pay some fine, his assets are not particularly liquid and are finite in nature. A substantial portion of his assets take the form of retirement income. He can afford to pay a fine in the range of $2500.00 to $5000.00. This is within the advisory guideline range for imposition of a fine consistent with a Total Offense Level of 6, as proposed herein.

## IV.   THE APPLICATION OF 18 U.S.C. § 3553(a)

**A.   The nature and circumstances of the offense and the history and characteristics of the defendant**

Although the Defendant has admitted the seriousness of the offense and the wrongful nature of his conduct, his personal history and characteristics weigh in favor of leniency.

**(1)   The Defendant's personal history and characteristics.**

Mr. King is almost 63 years old and retired from his family's road construction and engineering company. Other than a DUI in 2006, he has no criminal history. Since the breakup of a long-term relationship in 2019, he has lived a fairly isolated existence, living alone in a rural part of Putnam County.

Mr. King admits that he has always been impulsive and has often acted without thinking. He has been an alcoholic for a number of years. For the most part, Mr. King successfully balanced his drinking with his responsibilities. However, since his retirement, he acknowledges that his drinking had risen to an uncontrollable level.

By early 2020, Mr. King was becoming increasingly overwhelmed by the world around him and the looming threat of the COVID 19 pandemic. He spent most of his time drinking and becoming more and more immersed in Fox News, and other conservative sources of information.

**(2)   The nature and circumstances of the offense.**

This was the Brian King who found himself watching a Fox News story about Senators Richard Burr (R-NC), Kelly Loeffler (R-GA) and Diane Feinstein (D-CA) on March 20, 2020. The story accused the senators of profiting from confidential information about the COVID 19 pandemic by insider trading,

essentially selling travel-related stocks and buying stock in pharmaceutical companies. He had been drinking heavily and impulsively called Senator Burr's office, leaving the two messages that constituted his offense conduct. He has fully accepted responsibility for this offense.

### B.  The purposes of sentencing

Section 3553(a)(2) lists the purposes of sentencing. The sentence in this case should be the minimum necessary to accomplish those purposes.

#### (1)  Just punishment

For the reasons outlined above, and particularly in light of the factors underlying the offense conduct, just punishment in this case would be a term of probation, perhaps including a period of home detention.

#### (2)  Deterrence

The Defendant's conduct in this case was spontaneous and largely due to intoxication. He has developed insight into the impropriety of his conduct and is extremely unlikely to reoffend.

#### (3)  Protection of the public

Public officials are entitled to discharge their duties in an atmosphere of safety, free from intimidation. Incarcerating the Defendant will provide no more safety than a sentence of probation.

#### (4)  Rehabilitation

Mr. King was directed into substance abuse counseling as a condition of his pretrial release. He has continued treatment voluntarily, even after having been

discharged from the treatment required by Pre-Trial Services. He has maintained his sobriety for several months and is now beginning to work with his substance abuse counselor on exploring the reasons why he drinks to excess. She is helping him transition into mental health counseling to continue his rehabilitation. Mr. King is committed to his sobriety and to learning about and fixing the reasons why he drinks. He reports that he feels much better physically and emotionally. He is much less consumed and overwhelmed by things he can't control. As he says, he is learning that "I'm not Robin Hood."

### C.     The kinds of sentences available

The Defendant pled guilty to one count of transmitting threats in interstate commerce. There is no mandatory minimum sentence and no statutory bar to imposition of a period of probation, perhaps to include home confinement. He welcomes the special conditions recommended in the PSR (¶ 76). In fact, a probation sentence would help facilitate Mr. King's ongoing substance abuse and mental health treatment. Conversely, incarceration might very well interrupt the therapeutic progress he has made.

## V.     CONCLUSION

For the reasons stated in this memorandum, Mr. King respectfully urges this Court to impose a sentence which does not include imprisonment, but, rather, imposes some combination of probation and, if the Court feels it necessary, home confinement. Under the unique circumstances of this case and giving adequate consideration to Mr. King's post-offense behavior,

progress in counseling, and remorse, such a sentence would be reasonable and constitute fair and just punishment.

Respectfully submitted, this 15th day of September 2021.

**Law Offices of
A. RUSSELL SMITH, P.A**.

A. RUSSELL SMITH, Esquire
Florida Bar No. 296880
arsmith@thelawsmith.net
301 West Bay Street, Suite 1461
Jacksonville, Florida 32202
904/355-5633
office@thelawsmith.net
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy the above and foregoing has been electronically filed with the Clerk of Court via the CM/ECF system, which will forward a notice of the electronic filing to the United States Attorney's Office, Middle District of Florida, Jacksonville Division and all other counsel of Record.

*Counsel for Defendant*